16-4289-cr(L)
*United States v. Diakhoumpa*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "Summary Order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of December, two thousand seventeen.

Present:
> PIERRE N. LEVAL,
> PETER W. HALL,
> > *Circuit Judges,*
> COLLEEN MCMAHON∗
> > *District Judge.*

---

United States of America,

> *Appellee,*

v.

Mamadou Diakhoumpa, AKA Kareem, AKA Madeem Sall,

> *Defendant - Appellant.*

16-4289-cr,
17-861-con

---

*For Appellant*:          YUANCHUNG LEE, Assistant Public Defender, Federal Defenders of New York, Inc., New York, NY

---

∗ Chief Judge Colleen McMahon, of the United States District Court for the Southern District of New York, sitting by designation.

16-4289-cr(L)
*United States v. Diakhoumpa*

| | |
|---|---|
| *For Appellee*: | JASON M. SWERGOLD, Assistant U.S. Attorney, United States Attorney's Office for the Southern District of New York, New York, NY |

Appeal from a final judgment entered December 15, 2016, and decision and order entered March 23, 2017, in the Southern District of New York (Marrero, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the district court's judgment and decision and order are **AFFIRMED**.

Following a five-day jury trial, Defendant Mamadou Diakhoumpa ("Defendant"), a green card holder, was convicted of unlawful importation of counterfeit goods, in violation of 18 U.S.C. § 545, and trafficking counterfeit goods, in violation of 18 U.S.C. § 2320. Defendant appeals the district court's jury instruction on conscious avoidance, the imposition of his 366-day sentence, and the Restitution Order awarding Pierre Balmain, Louis Vuitton, and Burberry Limited ("the Brands") $12,026.35 for expenses incurred during the Government's investigation of Defendant. We assume the parties' familiarity with the underlying facts, the procedural history, the arguments presented on appeal, and the district court's rulings which we reference only to explain our decision.

### A. The District Court's Erroneous Conscious Avoidance Charge Did Not Prejudice Defendant's Substantial Rights

Judge Marrero's individual rules required the parties to submit jointly proposed requests-to-charge in advance of trial. Defendant opposed the Government's proposed conscious avoidance instruction, "object[ing] generally to

2

any instruction on conscious avoidance." Later at the charge conference, Defendant

again generally objected to the conscious avoidance instruction. Tr. at 465, 525,

*United States v. Diakhoumpa*, No. 15-00629-VM (ECF Dkt. No. 65) ("Tr."). Having

considered the parties' submissions, the district instructed the jury at the close of

trial:

> In determining whether Mr. Diakhoumpa acted knowingly, you may consider whether Mr. Diakhoumpa deliberately closed his eyes to what otherwise would have been obvious. As you all know, if a person actually is aware of a fact, then he knows that fact. But the law also allows you to find that the defendant had knowledge of a fact when the evidence shows that he was aware of a high probability of a fact, but took deliberate identifiable actions to avoid that fact. The law calls this conscious avoidance or willful blindness. In determining whether the government has proven beyond a reasonable doubt that Mr. Diakhoumpa acted knowingly, you may consider whether Mr. Diakhoumpa deliberately closed his eyes to what would otherwise have been obvious to him. However, you must remember that guilty knowledge may not be established by demonstrating that a defendant was merely negligent, foolish, or mistaken. You must conclude that Mr. Diakhoumpa subjectively believed that there was a high probability that a fact existed and that he took deliberate identifiable actions to avoid learning that fact.

Tr. at 623–24.

Because Defendant objected only generally to the district court's conscious

avoidance charge and did not raise the objection which he advances for the first

time on appeal—that the district court should have instructed the jury "[t]hat

regardless of everything else, the jury must acquit the defendant if it found that he

actually believed (even if unreasonably) that he was dealing in noncounterfeit

goods"—we review Defendant's challenge to the conscious avoidance jury

instruction for plain error. Appellant's Br. at 27 (emphasis omitted); *see United*

*States v. Ghailani*, 733 F.3d 29, 52 (2d Cir. 2013). Thus, we will conclude that the district court plainly erred only when "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.*

The Government concedes that the district court's conscious avoidance instruction omits the second portion of the charge: that a jury may not convict the defendant if it finds defendant actually believed the goods at issue were not counterfeit. *See United States v. Sicignano*, 78 F.3d 69, 72 (2d Cir. 1996). A conscious avoidance charge provides a way by which the jury may find Defendant possessed actual knowledge. *United States v. Ferrarini*, 219 F.3d 145, 154 (2d Cir. 2000) (citation omitted) ("A conscious avoidance instruction permits a jury to find that a defendant had culpable knowledge of a fact when the evidence shows that the defendant intentionally avoided confirming the fact."). Although there was a critical error in that charge here, we conclude, nonetheless, that the error did not prejudice Defendant's substantial rights, because the district court also gave an actual knowledge instruction to the jury and there was "overwhelming evidence" introduced at trial demonstrating that Defendant had actual knowledge that the goods he imported and sold out of his Bronx store were counterfeit. *See id.* ("[A]n erroneously given conscious avoidance instruction constitutes harmless error if the jury was charged on actual knowledge and there was 'overwhelming evidence' to

support a finding that the defendant instead possessed *actual* knowledge of the fact at issue."). Any error in the district court's instruction, therefore, did not amount to plain error. *See Ghailani*, 733 F.3d at 52.

The Government's proof at trial specifically addressed Defendant's direct knowledge that the goods in question were counterfeit. The Government introduced evidence that Defendant: (1) opened some of the fourteen notices from U.S. Customs and Border Protection ("Customs"), (2) received cease-and-desist letters from the Brands, (3) was confronted by one of the Brands' private investigators who personally delivered a cease-and-desist letter that Defendant signed, *inter alia*, acknowledging the counterfeit nature of his goods, and (4) was told by the owner of the store building to stop selling counterfeit goods.

Defendant argues there was a basis for the jury to believe he did not know that the products were counterfeit and was thus prejudiced by the omission in the instruction. That is, the Government's evidence that Defendant failed to open some of the fourteen Customs notices informing him that the goods he imported were counterfeit is evidence that Defendant did not have direct knowledge of the warnings inside those letters; and the counterfeit products were so similar to the real product that the Government needed expert witnesses to testify that Defendant's merchandise was not authentic.

That argument is unpersuasive. That the Defendant did not open some of Customs' warning letters does not show the absence of actual knowledge. Nor is the Government's use of expert testimony to prove the goods were counterfeit evidence

that necessarily proved Defendant did not know the goods were counterfeit. Defendant's arguments ignore the fact that Defendant was charged with importing the counterfeit items, thus arranging to acquire them from entities other than the Brands. This, coupled with Defendant's receipt of several warnings from both Customs and the Brands that the goods were counterfeit, overshadows any probability that the jury's findings would have been different had the district court included the omitted portion of the conscious avoidance instruction. *See United States v. Marcus*, 560 U.S. 258, 262 (2010). On this record, Defendant cannot show that the district court's erroneous jury instruction affected his substantial rights.

## B. Defendant's 366-Day Sentence Was Not Substantively Unreasonable

We review a defendant's sentence for substantive reasonableness, "tak[ing] into account the totality of the circumstances, giving due deference to the sentencing judge's exercise of discretion, and bearing in mind the institutional advantages of district courts." *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (en banc). A district court's sentencing determination will be set aside only in exceptional cases. *Id.* at 189.

Defendant's challenge to his 366-day sentence as substantively unreasonable fails. Defendant's main contention is that a two-day lower sentence of 364 days would require him to spend more time in prison (as he would not be eligible for early release), but would not make deportation "presumptively mandatory" upon completion of his sentence. Defendant argues that his ensuing deportation is far too

6

severe a collateral consequence for selling counterfeit goods out of a small clothing stall in the Bronx.

Defendant does not have a colorable challenge to his sentence, however, because the district court imposed a below Guidelines sentence and determined that deportation, as a collateral consequence of the 366-day sentence, was not inappropriate. First, the district court departed downward significantly from the suggested Guidelines range, concluding that the Guidelines range of 41 to 51 months exaggerated the "value" of the counterfeit goods and overstated the degree of the offense. Second, the district court did take into account the facts that Defendant's family was in the United States and that deportation was certain for Defendant if the court imposed a 366-day sentence. As in other cases this Court has reviewed in which the collateral consequences of a sentence have led to Defendant's deportation, *see, e.g.*, *United States v. Vella*, 632 Fed. App'x 52 (2d Cir. 2016) (summary order); *United States v. Volynskiy*, 431 Fed. App'x 8, 11 (2d Cir. 2011) (summary order), this is not a case in which the district court failed to consider Defendant's impending deportation at all. And as we have previously recognized, deportation as a collateral consequence of an imposed sentence does not preclude that sentence from being "located within the range of permissible decisions." *See Cavera¸* 550 F.3d at 191. Defendant's sentence was not substantively unreasonable.

## C. The District Court Did Not Abuse Its Discretion in Awarding the Brands Restitution

We review a restitution order for abuse of discretion. *United States v. Grant*, 235 F.3d 95, 99 (2d Cir. 2000). The Mandatory Victims Restitution Act ("MVRA")

provides for mandatory restitution by defendants who are convicted of certain crimes under Title 18, including fraud and offenses against property, when "an identifiable victim" has suffered a "pecuniary loss." 18 U.S.C. §§ 3663A(c)(1)(A)(ii), (c)(1)(B); *United States v. Bengis*, 631 F.3d 33, 38–39 (2d Cir. 2011).

Having in mind both the evidence introduced at trial and the Victim Impact Statements submitted by the Brands, the district court made "a reasonable estimate of the loss, given the available information," and determined that the Victim Impact Statements reasonably reflected the Brands' costs of investigating Defendant's sales of counterfeit products. *United States v. Uddin*, 551 F.3d 176, 180 (2d Cir. 2009) (internal quotation marks omitted). The district court did not err in doing so and did not exceed the bounds of its discretion in awarding the Brands $12,026.35 in restitution.

We have considered the Defendant's remaining arguments and find them to be without merit. Accordingly, the district court's judgment and decision and order are **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

8